# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

No. __:__-CV-_____

| | | |
|---|---|---|
| WAYNE NUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANDREW L. RITTER, in his official | ) | |
| capacity as Executive Director of the North | ) | |
| Carolina Board of Examiners for Engineers | ) | |
| and Surveyors; and JOHN M. LOGSDON, | ) | **VERIFIED COMPLAINT** |
| JONATHAN S. CARE, DENNIS K. | ) | **FOR DECLARATORY** |
| HOYLE, RICHARD M. BENTON, CARL | ) | **AND INJUNCTIVE** |
| M. ELLINGTON, JR., CEDRIC D. | ) | **RELIEF** |
| FAIRBANKS, BRENDA L. MOORE, | ) | |
| CAROL SALLOUM, and ANDREW G. | ) | |
| ZOUTWELLE, in their official capacities as | ) | |
| members of the North Carolina Board of | ) | |
| Examiners for Engineers and Surveyors, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

1.     This First Amendment lawsuit seeks to vindicate the right of Wayne Nutt, a

lifelong engineer, to publicly express his opinions about engineering and engineering-related

topics without first obtaining a license to "practice" engineering. Wayne does not want a license

to practice engineering because Wayne does not want to practice engineering. He just wants to

talk about it. He wants to use expertise gleaned from his more than 40 years of working as an

engineer to express his opinions about engineering topics, including by testifying about them in

public when someone wants to hear his testimony. But the North Carolina Board of Examiners

for Engineers and Surveyors has told him that any testimony that "requires engineering

knowledge" is itself the practice of engineering and that Wayne will be committing a

misdemeanor if he publicly states his opinions. He therefore seeks declaratory and injunctive relief to protect his right to truthfully communicate his opinions and the credentials on which those opinions are based.

## JURISDICTION AND VENUE

2.      Plaintiff seeks declaratory and injunctive relief pursuant to the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201–2202, and 42 U.S.C. § 1983.

4.      Venue lies in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

5.      Pursuant to Local Rules 40.1(b) and 40.1(c), this action is properly assigned to the Southern Division because Plaintiff Wayne Nutt resides in New Hanover County.

## PARTIES

6.      Plaintiff Wayne Nutt is a natural person and a resident of Ogden, North Carolina.

7.      Defendant Andrew L. Ritter is the Executive Director of the North Carolina Board of Examiners for Engineers and Surveyors (the "Board"), which is located in Raleigh, North Carolina. He is sued only in his official capacity.

8.      Defendant John M. Logsdon is a member of and the current Chair of the Board. He is sued only in his official capacity.

9.      Defendant Jonathan S. Care is a member of and the current Vice Chair of the Board. He is sued only in his official capacity.

Case 7:21-cv-00106-M   Document 1   Filed 06/09/21   Page 2 of 16

10.     Defendant Dennis K. Hoyle is a member of and the current Secretary of the Board. He is sued only in his official capacity.

11.     Defendants Richard M. Benton, Carl M. Ellington, Jr., Cedric D. Fairbanks, Brenda L. Moore, Carol Salloum, and Andrew G. Zoutewelle are all members of the Board. They are each sued only in their official capacities.

## FACTUAL ALLEGATIONS

### Wayne Nutt's Engineering Career

12.     Wayne Nutt is an engineer. He holds a bachelor's degree in engineering from the University of Iowa (class of 1967). He spent more than 40 years working as an engineer for various employers, mostly in North Carolina.

13.     Wayne Nutt is not a licensed professional engineer. He spent his career working for manufacturers and was therefore exempt from North Carolina's engineering licensure requirements under what is commonly known as the "industrial exemption," currently codified in North Carolina law at section 89C-25(7a) of the North Carolina General Statutes.

14.     For most of his career, Nutt was employed as an engineer by E.I. DuPont de Nemours & Company (commonly called DuPont). Nutt primarily served as a resident engineer at DuPont's Cape Fear location. After DuPont sold that unit in 2001, Nutt initially retired but returned to work as an engineer for the new ownership, DAK Americas, from 2002 until his eventual retirement in 2013.

15.     Over his career, Nutt designed and supervised the design of various sorts of industrial apparatus, including fluid-carrying pipes, in addition to various other projects requiring his expertise in engineering. Over his career, he developed a particular expertise in questions of hydraulics, fluid flow, and piping systems because he was regularly called upon to design these

systems as well as to evaluate other engineers' designs for these systems. For the last few years

of his career, Nutt held the job title of "Research Fellow" and worked primarily with the

company's international technology licensing business unit. At no point did any of Nutt's work

require him to hold an engineering license in North Carolina.

**Wayne Nutt's Public Advocacy**

16.     For many years, and with increasing frequency since his retirement, Nutt has also

made public statements about his opinions on engineering-related matters. He has written and

spoken to state and local officials, testified at various public or quasi-judicial hearings, and made

other public statements about a variety of engineering topics.

17.     In one instance, Nutt noticed an addition error in a traffic engineer's report to the

local government and raised it at a public hearing.

18.     In another instance, Nutt believed that a developer's public statements about an

engineering report misstated the report's actual meaning, and he raised these concerns in public

and directly with government officials.

19.     And in still another instance, Nutt submitted expert comments to the North

Carolina Department of Environmental Quality about a proposal involving methyl bromide

fumigation at state ports. Nutt's knowledge of methyl bromide came from his years of work as a

chemical engineer, which made him much more familiar with the hazards associated with the

proposal than the average person might have been.

20.     Nutt's public engineering advocacy has led him to share his opinions with various

public bodies including the North Carolina Department of Transportation, the U.S. Army Corps

of Engineers, and the New Hanover County engineering department.

21.     Nutt has also worked with North Carolina attorneys to help them understand

hydraulic and fluid-flow issues as they relate to the potential stormwater-drainage effects of proposed developments.

22.     Simply put, Nutt's engineering expertise has allowed him to notice errors and misstatements related to engineering, and he has not suffered these errors quietly. He talks about them publicly, and he expects to continue to notice things and talk about them publicly.

23.     Nutt has not misrepresented (and will not misrepresent) his credentials in connection with any of his speech related to engineering. He does not say or suggest that he is or has been a licensed engineer. He does refer to himself as a retired engineer because he is one: For over four decades, he legally worked as an engineer.

24.     Most recently, Nutt agreed to testify as an expert witness in a North Carolina state-court lawsuit. *Autry v. Bill Clark Homes, LLC*, in the Hanover County Superior Court. Wayne Nutt's son, Kyle Nutt, is an attorney for the plaintiff homeowners in that case, which concerns a flood allegedly caused by a storm water system. As Wayne discussed the case with his son, he learned that no one in the case was testifying about the relevant pipe's fluid capacity and the consequences that an observed blockage would be expected to have on that capacity.

25.     Wayne Nutt volunteered to offer testimony about the pipe's fluid capacity and the blockage for free. It was the sort of issue he had spent years working on, and he still had a copy of the leading relevant reference book, *Cameron Hydraulic Data*, on his bookshelf. Nutt thought that doing the work himself would be fairly straightforward and would save the homeowners a little money.

26.     Relying on the same sort of materials he would have relied upon to answer a similar question during his career as an engineer, Nutt prepared a 17-page preliminary draft of his opinions about the stormwater flow characteristics of the pipe in question.

27.     Nutt's opinion in the *Autry* case is just that—his opinion. It explains what Nutt thinks about certain technical questions and provides the bases for those opinions.

28.     A true and correct copy of Nutt's preliminary draft opinion in the *Autry* case (excluding its attachments) is attached as exhibit A to this complaint.

### The Board Threatens to Punish Nutt for Testifying

29.     When Nutt was deposed in the *Autry* case in March and April of 2021, he testified truthfully that he was not (and has never been) a licensed Professional Engineer in North Carolina. After he made this admission, representatives of the defendants in the *Autry* case threatened to report to the Board that Nutt was engaged in the unlicensed practice of engineering by testifying in the case.

30.     After the discussion of licensure at the deposition, Nutt's son, Kyle Nutt, contacted the Board and expressed disbelief that anyone could "practice" engineering by simply expressing an opinion and asserted that a prohibition of simply expressing an opinion would run afoul of the First Amendment.

31.     In response, the Board's counsel, David Tuttle, emailed Kyle Nutt on March 8, 2021, attaching a document entitled "Expert Testimony in North Carolina," which explained the Board's legal position. That document asserts that the "Board considers that any testimony that requires engineering knowledge to adequately provide and to protect the public falls with the definition of the practice of engineering and requires a [North Carolina Professional Engineer] license." It further says that producing "drawings, letters or [a] report" is "more clearly evidence of the practice of [engineering]."

32.     The "Expert Testimony in North Carolina" document clarifies that while "it is the determination of the Courts as to what testimony is accepted into court" the "Board addresses the

practice of engineering issues separate from a court determination of what is admissible in court."

33.     The "Expert Testimony in North Carolina" document goes on to threaten that "[t]he Board has proceeded against unlicensed individuals, including those licensed in other states but not in NC, for the unlicensed practice of engineering."

34.     A true and correct copy of the Board's "Expert Testimony in North Carolina" as sent to Kyle Nutt by the Board's attorney is attached as exhibit B to this complaint.

35.     Kyle Nutt again objected to the Board's position, arguing that the Board could not, consistent with the First Amendment, punish Wayne Nutt for truthfully stating his credentials and opinions.

36.     Upon information and belief, at the Board's May 10, 2021, meeting, David Tuttle notified the Board that he had received objections to its legal position regarding the prohibition on unlicensed engineering testimony. The Board unanimously decided not to alter its existing position.

37.     On May 23, 2021, Wayne Nutt received a certified letter at his home from David J. Evans, the Board's assistant director, informing him that the Board had initiated an investigation into his alleged unlicensed practice of engineering by both generating his draft report and then testifying at his deposition in the *Autry* case. A true and correct copy of that letter is attached as exhibit C to this complaint.

38.     The letter to Nutt indicated that "[c]harges had been filed with the Board indicating that [Nutt] may be in violation of [N.C. Gen. Stat. §] 89C-23 for practicing, or offering to practice, engineering without a license" and that the Board had initiated an investigation. Nutt was given 15 days to provide a written accounting of his activities to the

Board.

39. While the letter refers to "charges [having] been filed," that phrasing is premature: No criminal charges have been filed and no enforcement proceedings have yet begun. The Board's investigation is ongoing.

40. Nutt was quite reasonably alarmed by receiving this letter, which suggests that he will be subject to punishment if the Board determines his speech relies too much on engineering knowledge. He was similarly alarmed that continuing to testify in the *Autry* matter (or anywhere else) seemed likely to lead to similar legal consequences.

## Engineering Regulation in North Carolina

41. Licensed professional engineers in North Carolina are issued seals bearing their license number and the designation "professional engineer." N.C. Gen. Stat. § 89C-16.

42. North Carolina law forbids the construction of various types of projects unless the plans for those projects have been stamped and sealed by a licensed professional engineer (or, sometimes in the alternative, a licensed architect). *See, e.g.*, N.C. Gen. Stat. § 133-1.1 (requiring buildings that receive a certain level of public funding to be designed and sealed by an engineer or architect); N.C. Gen. Stat. § 160D-1110(b) (requiring engineer- or architect-stamped plans for certain building permits); N.C. Gen. Stat. § 130A-309.219 (authorizing the requirement of engineer-stamped analysis for certain coal-combustion projects); N.C. Gen. Stat. § 160A-300.1 (authorizing use of traffic-control photographic systems only where yellow-light timing conforms to a traffic plan sealed by a licensed engineer). In other instances, North Carolina law provides special regulatory treatment to projects or proposals backed by a plan stamped by a licensed engineer. *See* N.C. Gen. Stat. § 130A-336.1 (providing alternative process for wastewater systems approvals if a licensed engineer prepares signed and sealed plans for the

system); N.C. Gen. Stat. § 143-228.12 (mandating the creation of informal review processes for regulatory submissions that are stamped by a licensed engineer but not already covered by a reviewing authority's existing operating procedures).

43.     But North Carolina's regulation of licensed engineers is not limited to the stamping and sealing of plans or the regulatory requirements for stamped plans. North Carolina's definition of the "practice of engineering" is sweeping, encompassing "any service or creative work, the adequate performance of which requires engineering education, training, and experience, in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning, and design of engineering works and systems[.]" N.C. Gen. Stat. § 89C-3(6).

44.     North Carolina recognizes equally broad exceptions to its broad definition of engineering. A professional engineer's license is not required for reasonably necessary "engineering activities of a person . . . who is engaged in manufacturing, processing, or transmitting and delivering a product or public utility service[.]" N.C. Gen. Stat. § 89C-25(7a). This exemption is a common feature of engineering-licensing statutes across the country and is commonly referred to as the "industrial exemption."

45.     The result of the industrial exemption is that most people who work as engineers do not need a license to do so because they perform their work on behalf of an employer who is engaged in manufacturing, processing, or transmitting and delivering a product.

46.     According to one report, roughly 80 percent of the people practicing as "engineers" in the United States, like Nutt, do not have or need a license to do so. Paul M. Spinden, *The Enigma of Engineering's Industrial Exemption to Licensure: The Exception that Swallowed a Profession*, 83 UKMC L. Rev. 637, 638 & n.10 (2015).

47.     In other words, the Board's position is that it is perfectly legal for Wayne Nutt to spend decades gaining hands-on engineering expertise by designing pipes that are actually built (and supervising other people's design of pipes that were actually built) but that it would be unlawful for him to simply publicly state his opinions about a pipe designed by someone else.

48.     The Board's position is further that it was legal to work as an engineer but is unlawful for him, without a license, to describe himself as an "engineer" or hold himself out as having "engineering expertise" in connection with his speech about engineering.

49.     But both of those are true statements. Nutt was, in fact, a practicing engineer for over 40 years. And in those years, Nutt did develop a great deal of engineering expertise.

50.     To obtain a license as a professional engineer, Nutt would need to take at least one exam, seek a waiver to avoid sitting for a second exam, pay fees to the Board, and take continuing-education classes. Nutt does not want to do these things because he does not want to be a professional engineer or to have any of the legal powers of stamping and sealing plans that come with being a professional engineer.

51.     The unlicensed practice of engineering is a Class 2 misdemeanor. N.C. Gen. Stat. § 89C-23.

**Harm to Plaintiff**

52.     Violating North Carolina's prohibition on unlicensed engineering (N.C. Gen. Stat. § 89C-23) carries serious penalties. It is a class 2 misdemeanor, carrying up to $1,000 in fines and up to 60 days of imprisonment. And the Board is further empowered to enforce the prohibition civilly. N.C. Gen. Stat. § 89C-10(c), (f); 21 N.C. Admin. Code 56.1302. The prospect of these penalties would deter a person of ordinary firmness from the exercise of First Amendment rights, as would the specific threats of enforcement embodied in exhibits B and C to

this complaint.

53.     Wayne Nutt's proposed testimony in the *Autry* case falls within the Board's extremely broad definition of the "practice of engineering." His opinion undeniably requires "engineering knowledge," which the Board's "Expert Testimony in North Carolina" guide says is the practice of engineering, because his opinion is based on the knowledge he acquired during his four decades as an engineer. Moreover, Nutt has reduced his opinion to a "report," which includes "drawings," both things the Board's "Expert Testimony in North Carolina" guide identifies as evidence of the "practice of engineering."

54.     And Nutt has every reason to believe he will be punished if he continues to engage in speech that relies on his knowledge of engineering. For example, the Board has already opened an investigation into Nutt's unlicensed "practice" of engineering by writing a report and answering questions in his deposition.

55.     The Board, in communicating with Kyle Nutt about Wayne's proposed testimony, has also expressly noted its past practice of "proceed[ing] against" people who "practice" engineering without a license. The Board's emphasis on its past practice of "proceed[ing] against" people who testify in this manner appears calculated to put Nutt on notice that the Board may proceed against him should he continue to testify in this matter.

56.     Trial in the *Autry* matter in set for July 19, 2021, though (upon information and belief) the defendants in that case have requested a continuance that will likely result in the trial being delayed until either September 2021 or January 2022. At that trial, Wayne Nutt will be faced with the choice of either refusing to take the stand or taking the serious risk of being charged with a misdemeanor for truthfully answering questions about his opinions.

57.     Not only is Nutt's testimony in *Autry* the "practice of engineering" within the

Board's extremely broad understanding of that term, so too has been much of Nutt's past advocacy. He has routinely relied on his engineering knowledge to discuss engineering reports and proposed projects with public officials and at public hearings. He would like to continue to make public statements of this sort in the future.

58.     But for the threat of enforcement of North Carolina's extremely broad prohibition on the unlicensed "practice" of engineering, Nutt would be able to continue his longstanding public advocacy on engineering topics without fear of criminal punishment.

59.     In the absence of relief from this Court, Nutt will have to make a choice—in the *Autry* trial and in every future instance in which he wants to make public statements based on his engineering expertise—between risking prosecution and silencing himself in order to avoid legal liability.

60.     Nutt intends to continue speaking about engineering as the occasion arises, to testify before government agencies, serve as a witness in court cases, and submit comments to regulatory authorities when he has relevant opinions. He also intends to continue truthfully describing his relevant work experience.

## CAUSE OF ACTION

### (First Amendment's Speech Clause)

61.     Wayne Nutt does not want to engage in any conduct related to the practice of engineering. He does not want to build anything or cause anything to be built. He does not want to stamp or seal plans. He does not want the legal authority that comes with a professional engineer's official seal. He does not want his opinions to be given conclusive legal effect by, for example, authorizing the issuance of a building permit or the construction of a publicly funded building.

62.     Nutt wants instead to talk about engineering. He wants to communicate his

opinions about engineering topics through public statements and testimony.

63.     At no point has Nutt misled anyone or allowed anyone to be misled about whether he is a licensed professional engineer. At no point since he retired has he engaged in the conduct of engineering. He has, however, regularly developed and shared opinions that are based on his extensive engineering experience, and he has truthfully discussed his background where it is relevant.

64.     As applied to Nutt, the only conduct triggering coverage under North Carolina's engineering laws consists of communicating a message.

65.     As applied to Nutt, the restrictions of North Carolina's engineering laws are content-based restrictions on speech. If Nutt testifies at a public hearing that a proposed development is a bad idea because the buildings are ugly, he has not violated section 89C-23 of the North Carolina statutes. If he uses his engineering knowledge to testify that a proposed development is a bad idea because he thinks the developer has misstated the flooding consequences of the project, he has violated section 89C-23. If a court allows him to testify as an expert witness in an intellectual-property case based on his years of experience with technology licensing, he has not violated section 89C-23; if a court allows him to testify as an expert witness in pipe-flow capacities based on his years of experience designing pipes, he has violated section 89C-23.

66.     Defendants have no legitimate interest in prohibiting Nutt from publicly sharing his engineering opinions simply because he is unlicensed.

67.     Defendants have no substantial interest in prohibiting Nutt from publicly sharing his engineering opinions simply because he is unlicensed.

68.     Defendants have no compelling interest in prohibiting Nutt from publicly sharing

his engineering opinions simply because he is unlicensed.

69.     Defendants have no interest in suppressing speech that "requires engineering knowledge" simply because the speaker lacks an engineering license.

70.     As applied to speech about engineering, section 89C-23 is not tailored to any legitimate government objective. Many individuals, like Nutt, have developed enormous experience by practicing engineering under the "industrial exemption." These individuals, who can lawfully design and build things under North Carolina law, would nonetheless be committing a misdemeanor if they use the knowledge they gained from actually designing and building things to express opinions about designing and building things.

71.     Section 89C-23 is also overbroad and overinclusive because it outlaws speech about engineering even where a speaker's audience is perfectly aware that he is not a licensed professional engineer and where his speech consists only of opinions about engineering topics.

72.     Upon information and belief, Defendants possess no evidence that would allow them to carry their burden of proof to justify their suppression of Nutt's speech about engineering under any degree of First Amendment scrutiny.

73.     It is perfectly common for people to testify and otherwise offer opinions about complicated areas of science, economics, and other topics without state licensure. Upon information and belief, Defendants will be able to produce no evidence that this torrent of unlicensed expert opinion has caused harms that have been avoided by their licensing requirement for speech about engineering.

**REQUEST FOR RELIEF**

Plaintiff requests the following relief:

A.     A judgment declaring that North Carolina General Statutes sections 89C-3(6)

(definition of "practice of engineering") and 89C-23 (prohibition on unauthorized practice of engineering and use of the word "engineer"), as well as the Board's policies and practices of enforcement of these statutes as embodied in exhibit B to this complaint, violate the Speech Clause of the First Amendment of the United States Constitution, both on their face and as applied to Plaintiff and others similarly situated;

      B.     A permanent injunction prohibiting the Board from enforcing North Carolina General Statutes sections 89C-3(6) (definition of "practice of engineering") and 89C-23 (prohibition on unauthorized practice of engineering and use of the word "engineer"), as well as the Board's policies and practices of enforcement of these statutes as embodied in exhibit B to this complaint, against Plaintiff and others similarly situated for speaking or testifying about topics that require engineering knowledge without first obtaining an engineering license;

      C.     An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

      D.     Any other legal and equitable relief as the Court may deem just and proper.

Respectfully submitted this 9th day of June, 2021.

/s/ W. Cory Reiss

| | |
|---|---|
| W. Cory Reiss (NC Bar No. 41549) | Robert J. McNamara (VA Bar No. 73208)* |
| REISS & NUTT, PLLC | Joseph Gay (D.C. Bar No. 1011079)* |
| 1221 Floral Parkway, Ste 104 | INSTITUTE FOR JUSTICE |
| Wilmington, NC 28403 | 901 North Glebe Road, Suite 900 |
| Phone: (910) 420-4674 | Arlington, VA 22203 |
| Fax: (910) 420-4637 | Phone: (703) 682-9320 |
| Email: wcreiss@reissnutt.com | Fax: (703) 682-9321 |
| | E-mail: rmcnamara@ij.org |
| *Local Civil Rule 83.1(d) Counsel for* |     jgay@ij.org |
| *  Plaintiffs* | *\* Notice of Special Appearance pursuant to* |
| | *Local Rule 83.1(e) forthcoming* |

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

No. __:__-CV-_____

| | |
|---|---|
| WAYNE NUTT, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW L. RITTER, in his official capacity as ) <br> Executive Director of the North Carolina Board ) <br> of Examiners for Engineers and Surveyors; and ) <br> JOHN M. LOGSDON, JONATHAN S. CARE, ) <br> DENNIS K. HOYLE, RICHARD M. BENTON, ) <br> CARL M. ELLINGTON, JR., CEDRIC D. ) <br> FAIRBANKS, BRENDA L. MOORE, CAROL ) <br> SALLOUM, and ANDREW G. ZOUTWELLE, ) <br> in their official capacities as members of the ) <br> North Carolina Board of Examiners for ) <br> Engineers and Surveyors, ) <br> ) <br>     Defendants. ) <br> ) <br> ) | **VERIFIED COMPLAINT** <br> **FOR DECLARATORY AND** <br> **INJUNCTIVE RELIEF** |

## VERIFICATION OF PLAINTIFF WAYNE NUTT

I, Wayne Nutt, declare as follows:

I have personal knowledge of the facts set forth in paragraphs 6; 12–40; and 52–63, and if

called upon, I would competently testify as to them.

I verify under penalty of perjury under the laws of the United States of America that the

factual statements in this complaint concerning myself, my work history and expertise, and my

interactions with the North Carolina Board of Examiners for Engineers and Surveyors are true.

Executed on June _9_, 2021

_Wayne L. Nutt_
Wayne Nutt