IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-833

No. COA22-293

Filed 20 December 2022

New Hanover County, No. 19-CVS-4520

JACKIE W. AUTRY, SHARON J. AUTRY, ROBERT BLACKWELL, CARL B. CAREY, DANIEL DENSTON, ROBERT GRAHAM, LORI L. MONEYMAKER, JAMES JONES, JENNI H. JONES, JASON P. HERRING, CINDY P. HERRING, JASON R. LAMBERT AS ADMINISTRATOR OF THE ESTATE OF CHARLES R. LAMBERT, RONNIE S. NORTON, JR., JOYCE M. NORTON, MARTIN B. TAYLOR, MATTI MCMURRAY AND JESSICA L. WAGGONER, Plaintiffs,

v.

BILL CLARK HOMES, LLC, BILL CLARK HOMES OF WILMINGTON, LLC, BILL CLARK HOMES OF GREENVILLE, LLC, BILL CLARK CONSTRUCTION COMPANY, INC., AND WILLIAM H. CLARK, Defendants.

Appeal by Plaintiffs from order entered 21 June 2021 by Judge R. Kent Harrell and from order entered 24 November 2021 by Judge Phyllis Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 7 September 2022.

*Reiss & Nutt, PLLC, by Kyle J. Nutt, for Plaintiffs-Appellants.*

*McAngus Goudelock & Courie, by Jeffery I. Stoddard and Walt Rapp, and Hamlet & Associates, PLLC, by H. Mark Hamlet and Suzanne E. Brown, for Defendants-Appellees.*

COLLINS, Judge.

¶ 1   This appeal stems from a negligence action filed by Plaintiffs, subdivision homeowners, against Defendants, subdivision developers, alleging that Defendants'

failure to maintain a drainage pipe that extended beyond the subdivision boundaries resulted in property damage due to flooding from Hurricane Florence. Plaintiffs appeal from orders granting Defendants summary judgment on Plaintiffs' claims for negligence and punitive damages.[1] Plaintiffs argue that the trial court[2] erred by granting Defendants summary judgment on Plaintiffs' negligence claim because Defendants owed both a statutory and common-law duty to maintain the off-premises drainage pipe. Plaintiffs argue that the trial court erred by granting Defendants summary judgment on Plaintiffs' punitive damages claim because the trial court applied the wrong standard when evaluating Defendants' motion for summary judgment, and because a genuine issue of material fact exists as to whether Defendants' failure to maintain the off-premises drainage pipe was "willful or wanton conduct" as defined in N.C. Gen. Stat. § 1D-5.

¶ 2    Because Plaintiffs filed their complaint more than six years after the off-premises drainage pipe was substantially completed, the statute of repose bars Plaintiffs' negligence claim, and summary judgment was proper. Additionally, because Plaintiffs' negligence claim is barred, we do not address Plaintiffs' arguments regarding their punitive damages claim. The trial court's orders are affirmed.

---

[1] Plaintiffs label their claims "Negligence" and "Gross Negligence/Willful and Wanton Conduct/Punitive Damages."
[2] Plaintiffs appeal from separate orders entered by two different superior court judges. We refer to the judges collectively as the trial court.

## I. Factual Background

¶ 3  The record evidence, viewed in the light most favorable to Plaintiffs, indicates that the following series of events took place between 1994 and 2018:

¶ 4  In October 1994, Defendants applied to the North Carolina Department of Environment, Health, and Natural Resources ("DENR")[3] for a stormwater permit for Tidalholm Subdivision in New Hanover County. The application included a description of the subdivision; a proposed plan for managing stormwater runoff in eleven vegetated swales and one pond, located between lots 129 and 130; a certification that certain restrictions would be included in the recorded deeds limiting the allowable built-upon area; and a stormwater maintenance plan indicating that "[i]t shall be the responsibility of the Tidalholm Home Owners Association to provide [certain enumerated] inspections and maintenance of the stormwater systems[.]"

¶ 5  DENR approved Defendants' application and issued a certification of compliance in December 1994 that stated:

> Based on our review of the project plans and specifications, we have determined that the Tidalholm Subdivision stormwater control system complies with the Stormwater Regulations set forth in Title 15A NCAC 2H.1003(a)(3) and (i).
>
> . . . .

---

[3] The Department's health functions were removed in 1997 and it became known as the North Carolina Department of Natural Resources. In 2015, the Department's name was changed to the Department of Environmental Quality, as it is now known. At all relevant times the Department was titled DENR.

> Any modification of the plans submitted to this Office or further development of this contiguous project will require an additional Stormwater Submittal/Modification and approval prior to initiation of construction . . . . Modifications include but are not limited to; project name changes, transfer of ownership, redesign of built-upon surfaces, addition of built-upon surfaces, redesign or further subdivision of the project area.
>
> This certification shall be effective from the date of issuance until rescinded. The project shall be constructed and maintained in accordance with the plans and specifications approved by the Wilmington Regional Office.

¶ 6  In December 1995, Tidalholm Homeowners Association, Inc. ("Tidalholm HOA"), filed articles of incorporation with the North Carolina Secretary of State. Pursuant to these articles, "the specific purposes for which it is formed are to provide for maintenance, preservation and architectural control of the residence Lots and Common Area" of Tidalholm Subdivision, to "exercise all of the powers and privileges and to perform all of the duties and obligations of the Association as set forth in that certain Declaration of Covenants, Conditions and Restrictions," and to "maintain . . . real or personal property in connection with the affairs of the Association[.]" However, because Tidalholm HOA was incorporated after Defendants submitted the stormwater permit application, Tidalholm HOA did not assume the responsibilities under the certificate of compliance.

¶ 7  In July 1999, a Tidalholm Subdivision resident experienced flooding and hired an architect to investigate the issue. After completing his investigation, the architect

wrote a letter to Defendants stating:

> After reviewing the documents, maps, and the pictures of this area, [my firm] has come to the conclusion that the problem of the flooding comes from the thirty foot (30') drainage ditch behind lot 128. This drainage ditch needs to be dredged so the storm water detention discharge pipe can do its job.

¶ 8  In November 1999, DENR performed a compliance inspection at Tidalholm Subdivision and found the project in violation of the certification of compliance issued in 1994. DENR sent a letter to Defendants stating that the swales and pond had not been properly maintained in various ways, and that "[t]he recorded deed restrictions for this development have not been received by this Office." The letter did not mention a drainage ditch behind lot 128. DENR directed Defendants to "[p]rovide a written 'Plan of Action' which outlines the actions you will take to correct the violation(s) and a time frame for completion of those actions, on or before December 17, 1999."

¶ 9  DENR performed another compliance inspection in April 2000 and found the project in violation of the 1994 certification of compliance. DENR sent a letter to Defendants noting, among other things, that "the recent flooding problems at the detention pond in Tidalholm [are attributable to] a high water table, however, the offsite drainage area into the detention pond has been found to be well in excess of the 600,000 square feet accounted for in [the original] design calculations." DENR

directed Defendants to "[p]rovide a written 'Plan of Action' which outlines the actions [Defendants] will take to correct the violations and a time frame for completion of those actions, on or before May 18, 2000[,]" and reminded Defendants that "offsite runoff must either be routed around the system or accounted for in the design of the pond."

¶ 10  By letter dated 5 May 2000, Defendants acknowledged receipt of letters dated 11[4] and 18 April 2000 indicating violations of the certification of compliance and requested additional time to develop a plan of action. Defendants submitted a Stormwater Management Permit Application Form in July 2000, seeking to modify their 1994 permit. Among the proposed modifications included the installation of a weir box under Lipscomb Drive and a reinforced concrete bypass pipe between lots 127 and 128 of the subdivision. Defendants' plan did not show the bypass pipe extending beyond Tidalholm Subdivision boundaries. By letter dated 28 August 2000, DENR acknowledged receipt of Defendants' application and responded, in part:

> Because of the as-built condition, the bypass as proposed is acceptable. The permit to be issued will reserve the right to address the offsite situation again if the check dams in the ditches in [a neighboring subdivision] are removed or if the ditches are piped, or if complaints regarding flooding problems are received.

However, because the application was incomplete, DENR required additional

---

[4] An 11 April letter is not in the record.

information, including copies of the recorded deed restrictions, to continue its review.

¶ 11     In November 2000, DENR notified Defendants by letter that the recorded deed restrictions for lots sold between 1995 and 1999 did not include language limiting the built-upon area of the subdivision lots, as the 1994 certification of compliance required. DENR directed Defendants to remedy the recorded deed restrictions and reminded Defendants to record the required restrictions prior to selling lots in the future. By 2016, Defendants had yet to correct the recorded deed restrictions.

¶ 12     Meanwhile, the developers of Kirkwood at Arrondale ("Kirkwood"), an adjacent subdivision, were developing stormwater management plans to be approved by the North Carolina Department of Transportation ("NCDOT").[5] As part of this work, engineers for Kirkwood met with Defendants, and, in December 2001, submitted proposed plans to NCDOT. The plans depicted the weir box and bypass pipe that Defendants had proposed as well as a connection from the bypass pipe to a drainage pipe that extended beyond Tidalholm Subdivision boundaries and into a wooded ravine behind lot 128.

¶ 13     In August 2003, engineers for Kirkwood sent letters to the residents of Tidalholm Subdivision lots 127 and 128 stating:

> As part of an agreement between the developers for
> Kirkwood at Arrondale subdivision and the North Carolina

---

[5] Kirkwood dealt with NCDOT rather than DENR because part of the subdivision's stormwater discharged through public streets.

> Department of Transportation, we will be installing a stormwater discharge pipe through an existing easement along your southern and western property line. This line will provide drainage relief during major storm events. Please note the work should commence within the next 30 days and be completed within 30 days thereafter. . . .

The project was completed by 2007. The completed project included a drainage pipe that extends beyond Tidalholm Subdivision boundaries and terminates in a wooded ravine behind lot 128 on property owned by Armstrong Developers, Inc., a now dissolved corporation.

¶ 14   In September 2016, upon discovering that the stormwater permit had not been transferred to Tidalholm HOA in 1994, Defendants submitted to DENR a stormwater permit ownership change form to change ownership of the stormwater permit from Defendants to Tidalholm HOA and Tidalholm Village Homeowner's Association, Inc. ("Tidalholm Village HOA").[6] Ownership of the permit was not successfully transferred until 9 October 2019. In September 2018, Hurricane Florence struck Wilmington, and Plaintiffs' homes experienced severe flooding. An engineer for New Hanover County investigated the flooding and discovered that the drainage pipe in the wooded ravine behind Tidalholm Subdivision lot 128 "was approximately 80% blocked." The engineer believed the blockage to be "the cause of the flooding

---

[6] Articles of incorporation for Tidalholm Village HOA are not in the record. However, the record indicates that Tidalholm HOA was responsible for lots 1-49 of Tidalholm Subdivision, and Tidalholm Village HOA was responsible for lots 50-137.

experienced in the Tidalholm neighborhood . . . ."

## II.     Procedural History

¶ 15        Plaintiffs filed a complaint against Defendants on 4 December 2019 asserting claims for negligence and punitive damages.  Defendants answered in February 2021 and joined Tidalholm HOA and Tidalholm Village HOA as third-party defendants.  On 1 June 2021, Defendants filed a motion for partial summary judgment, requesting that the court dismiss Plaintiffs' punitive damages claim.  After reviewing the forecast of evidence and hearing arguments, the trial court entered partial summary judgment in favor of Defendants on that claim.

¶ 16        Defendants voluntarily dismissed their third-party complaint in July and filed an amended motion for summary judgment in September on Plaintiffs' remaining negligence claim.  After reviewing the forecast of evidence and hearing arguments, the trial court granted summary judgment in favor of Defendants and dismissed Plaintiffs' complaint.  Plaintiffs timely appealed both orders.

## III.     Discussion

¶ 17        Plaintiffs argue that the trial court erred by granting summary judgment to Defendants on Plaintiffs' claims for negligence and punitive damages.

### A. Standard of Review

¶ 18        Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). "A genuine issue of material fact is one that can be maintained by substantial evidence." *Curlee v. Johnson*, 377 N.C. 97, 2021-NCSC-32, ¶ 11 (quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *Ussery v. Branch Banking & Tr.*, 368 N.C. 325, 335, 777 S.E.2d 272, 278-79 (2015) (quotation marks and citations omitted).

¶ 19  We review a trial court's order granting summary judgment de novo, taking the evidence in the light most favorable to the non-moving party. *Da Silva v. WakeMed*, 375 N.C. 1, 10, 846 S.E.2d 634, 640-41 (2020). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

**B. Negligence**

¶ 20  Plaintiffs argue that the trial court erred by granting Defendants summary judgment on Plaintiffs' negligence claim. Specifically, Plaintiffs argue that Defendants owed both a statutory and common-law duty to maintain the drainage pipe that extended beyond Tidalholm Subdivision boundaries. Defendants dispute that they owed a duty to Plaintiffs and argue that, even if a duty was owed to

Plaintiffs, the statute of repose bars Plaintiffs' claims.

¶ 21  The applicable statute of repose provides, "No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement." N.C. Gen. Stat. § 1-50(a)(5)(a) (2021).

> For purposes of this subdivision, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:
>
> . . . .
>
> 5. Actions in contract or in tort or otherwise;
>
> . . . .
>
> 9. Actions against . . . any person who develops real property or who performs or furnishes the design, plans, specifications, surveying, supervision, testing or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property.

N.C. Gen. Stat. § 1-50(a)(5)(b) (2021). The statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue[.]" *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985) (citations omitted). "If the action is not brought within the specified period, the plaintiff literally has no cause of action." *Hargett v. Holland*, 337 N.C. 651, 655, 447 S.E.2d 784, 787 (1994) (quotation marks, emphasis, and citations omitted).

"Summary judgment is proper if the pleadings or proof show without contradiction that the statute of repose has expired." *Glens of Ironduff Prop. Owners Ass'n v. Daly*, 224 N.C. App. 217, 220, 735 S.E.2d 445, 447 (2012) (quotation marks and citation omitted).

¶ 22  Effectively, a statute of repose "creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained." *Hargett*, 337 N.C. at 654, 447 S.E.2d at 787 (citation omitted). Thus, a plaintiff has the burden of showing that they brought the action within six years of either (1) the substantial completion of the improvement or (2) the specific last act or omission of defendant giving rise to the cause of action. *See Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76, 518 S.E.2d 789, 791 (1999) (citation omitted).

### 1. *Substantial Completion*

¶ 23  An improvement is substantially complete when it becomes fit for the purpose for which it was intended. *See* N.C. Gen. Stat. § 1-50(a)(5)(c) (2021). The record evidence indicates that Defendants developed a plan to install a weir box and a concrete bypass pipe between lots 127 and 128 in July 2000. By December 2001, the plan had been amended to include a drainage pipe that extended beyond Tidalholm Subdivision boundaries. A 2003 letter to the residents of Tidalholm Subdivision lots 127 and 128 indicated that a project would take place near the end of the year that included installation of the weir box and bypass pipe. The weir box, bypass pipe, and

off-premises drainage pipe were installed by 2007, more than ten years before Plaintiffs filed their complaint and well outside the six-year period of repose.

### 2. *Last Act or Omission*

¶ 24 This Court has interpreted the phrase "the later of the last act or omission or date of substantial completion" in N.C. Gen. Stat. § 1-50(a)(5)(a) to mean "the date at which time the party (contractor, builder, etc.) has completed performance of the improvement contract." *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 241, 515 S.E.2d 445, 450 (1999). In the absence of an improvement contract, this Court has "no basis for determining that the 'last act' . . . occurred later than the date of substantial completion." *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 495, 764 S.E.2d 203, 215 (2014).

¶ 25 In *Monson*, plaintiff sued defendant Paramount Homes, Inc. ("Paramount") in 1996 for defective construction of a home built in 1990. 133 N.C. App. at 235, 515 S.E.2d at 446. In 1997, Paramount filed a third-party complaint against Carolina Builders Corporation ("CBC") who had provided the original windows and doors for the home and had repaired them in 1994 at plaintiff's request. *Id.* at 236, 515 S.E.2d at 446. Paramount's third-party complaint was dismissed as outside the applicable period of repose because the home was completed in 1990. *Id.* at 236, 515 S.E.2d at 447. Paramount appealed, arguing that CBC's 1994 repairs were completed pursuant to a warranty and qualified as a last act or omission. *Id.*

¶ 26 This Court rejected Paramount's argument stating, "Assuming *arguendo* that a continuing duty of repair existed pursuant to a warranty [to plaintiff], no evidence indicates that CBC had a continuing duty to repair under the improvement contract with Paramount." *Id.* at 239, 515 S.E.2d at 448. This Court reasoned that "[t]o allow the statute of repose to toll or start running anew each time a repair is made would subject a defendant to potential open-ended liability for an indefinite period of time, defeating the very purpose of statutes of repose such as N.C. Gen. Stat. § 1-50(5)." *Id.* at 240, 515 S.E.2d at 449 (citation omitted). Accordingly, this Court held that, although "[a] duty to complete performance may occur after the date of substantial completion, . . . a repair does not qualify as a last act under N.C. Gen. Stat. § 1-50(5) unless it is required under the improvement contract by agreement of the parties." *Id.* at 241, 515 S.E.2d at 450 (quotation marks omitted).

¶ 27 In *Trillium Ridge*, defendant developer contracted to construct homes in a condominium development in 2003. 236 N.C. App. at 484, 764 S.E.2d at 208. In 2010, extensive water damage was discovered and attributed to defects in the original construction of the buildings. *Id.* at 485, 764 S.E.2d at 209. Plaintiff condominium association sued defendant in 2011 and attempted to avoid the statute of repose by arguing that defendant's last act occurred in 2006 when defendant repaired a resident's deck. *Id.* at 485, 494, 764 S.E.2d at 209, 215. Plaintiff did not produce the original construction contract but argued that the repairs "might have been required

as part of the original contract . . . ." *Id.* at 495, 764 S.E.2d at 215. This Court rejected plaintiff's argument, stating that, without the contract, "we have no basis for determining that the 'last act' . . . occurred later than the date of substantial completion[,]" and pointing out that plaintiff "has the burden of showing that he or she brought the action within six years of . . . the specific last act or omission of defendant giving rise to the cause of action." *Id.* at 495, 764 S.E.2d at 215 (quotation marks and citation omitted).

¶ 28  Here, Plaintiffs have not produced a contract related to the off-premises drainage pipe, let alone one that confers maintenance responsibilities on Defendants. Plaintiffs point out that a maintenance plan was required for Defendants to obtain a stormwater permit from DENR. However, Defendants' application for a stormwater permit and the resulting permit issued by DENR to Defendants cannot be construed to be a contract for construction of the off-premises drainage pipe between Plaintiffs and Defendants. Accordingly, the date of substantial completion must be used to determine whether the statute of repose bars Plaintiffs' claim.

### 3. *Exceptions to the Statute of Repose*

#### a. *Actual Possession or Control*

¶ 29  Plaintiffs rely on N.C. Gen. Stat. § 1-50(a)(5)(d) to argue that the statute of repose is not applicable here because Defendants had a maintenance obligation.

¶ 30  Subsection 1-50(a)(5)(d) provides:

> The limitation prescribed by this subdivision shall not be asserted as a defense by any person in actual possession or control, as owner, tenant or otherwise, of the improvement at the time the defective or unsafe condition constitutes the proximate cause of the injury or death for which it is proposed to bring an action, in the event such person in actual possession or control either knew, or ought reasonably to have known, of the defective or unsafe condition.

N.C. Gen. Stat. § 1-50(a)(5)(d) (2021).

¶ 31 This subsection applies specifically to defendants in actual possession or control of the defective or unsafe condition. Nothing in the subsection indicates that it applies to instances of maintenance obligations generally, and Plaintiffs make no argument to support their position. Additionally, although Plaintiffs' complaint alleges that in September 2018 Defendants were in actual possession or control of the off-premises drainage pipe, the record evidence does not support Plaintiffs' allegation and Plaintiffs have provided no support for this allegation on appeal.

   b. *Willful or Wanton Negligence*

¶ 32 Plaintiffs also argue that the statute of repose is not applicable here because Defendants' conduct was willful or wanton. *See* N.C. Gen. Stat. § 1-50(a)(5)(e) (2021) ("The limitation prescribed by this subdivision shall not be asserted as a defense by any person who shall have been guilty of . . . willful or wanton negligence . . . in developing real property . . . or construction of an improvement to real property, or a repair to an improvement to real property . . . ."). "'Willful or wanton conduct' means

the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." N.C. Gen. Stat. § 1D-5(7) (2021).

¶ 33  The record evidence, viewed in the light most favorable to Plaintiffs, does not support the conclusion that Defendants' conduct was willful or wanton. Defendants proposed a plan for managing stormwater runoff in eleven vegetated swales and one pond, located between lots 129 and 130, that received a certification of compliance from DENR in 1994. In 1999, an architect hired by a subdivision resident sent a letter to Defendants stating that the drainage ditch behind lot 128 needed to be dredged to alleviate flooding in the subdivision. In 1999 and 2000, DENR notified Defendants that Tidalholm Subdivision was in violation of its certification of compliance because the off-site drainage exceeded Defendants' original calculations, the swales and detention pond had not been properly maintained in various ways, and the recorded deed restrictions for the subdivision had not been received. DENR directed Defendants to develop a plan to correct the violations.

¶ 34  Defendants developed and submitted a plan to resolve the violations, which included the installation of a weir box and a concrete bypass pipe between lots 127 and 128. DENR stated that Defendants' plan as proposed was acceptable; that plan did not show the bypass pipe extending beyond Tidalholm Subdivision boundaries.

Meanwhile, engineers for Kirkwood met with Defendants to develop and submit stormwater management plans to be approved by NCDOT. The plans submitted to NCDOT included the weir box and bypass pipe between lots 127 and 128, as well as the drainage pipe that extended beyond Tidalholm Subdivision boundaries. Although the plans submitted by Kirkwood to NCDOT did not match Defendants' plan that DENR found acceptable, Defendants did not notify DENR of the change.

¶ 35    This evidence shows that Defendants were responsive to DENR's notices of violations but failed to notify DENR that the plans changed due to coordination with a neighboring subdivision. It does not support the conclusion that Defendants' conduct was in "conscious and intentional disregard of and indifference to the rights and safety of others," or that Defendants knew their conduct was "reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

¶ 36    Plaintiffs also argue that Defendants' continued failure to include the required deed restrictions, along with their failure to transfer the stormwater permit to Tidalholm HOA and Tidalholm Village HOA, "is evidence that [Defendants] deliberately chose not to discharge their duties in violation of the law and in reckless disregard of the Plaintiffs' rights." Even if these failures are viewed as an intentional disregard for regulatory requirements, Plaintiffs have forecast no evidence indicating that these administrative failures were "reasonably likely to result in injury, damage, or other harm." *Id.*

¶ 37 According to DENR's November 2000 letter to Defendants, the consequence for failing to include the required deed restrictions was that "the subdivision cannot be considered as maintaining a low density[;]" the letter makes no mention that the deed restrictions are necessary for safety reasons. Although Defendants' conduct, viewed in the light most favorable to Plaintiffs, could demonstrate an intentional disregard of and indifference to DENR's regulations, it does not demonstrate an "intentional disregard of and indifference to the rights and safety of others." *Id.*

¶ 38 Because the record evidence indicates that the off-premises drainage pipe was substantially completed in 2007, far more than six years before Plaintiffs filed their complaint, and because no exception to the statute of repose applies, the "pleadings or proof show without contradiction that the statute of repose has expired," and summary judgment was properly granted. *Glens of Ironduff*, 224 N.C. App. at 220, 735 S.E.2d at 447.

**C. Punitive Damages**

¶ 39 Plaintiffs also argue that the trial court erred by granting Defendants summary judgment on Plaintiffs' claim for punitive damages. Specifically, Plaintiffs argue that the trial court applied the wrong standard when evaluating Defendants' motion for summary judgment on this claim, and that the forecast of evidence could support an award of punitive damages.

¶ 40 Punitive damages may only be awarded "when a cause of action otherwise

exists in which at least nominal damages are recoverable by the plaintiff." *Shugar v. Guill*, 304 N.C. 332, 335, 283 S.E.2d 507, 509 (1981) (citation omitted). Because Plaintiffs' negligence claim is barred by the statute of repose, Plaintiffs may not recover punitive damages. Accordingly, we do not address Plaintiffs' arguments.

## IV. Conclusion

¶ 41  Because the record shows proof without contradiction that the drainage pipe that extended beyond Tidalholm Subdivision boundaries was substantially completed more than six years before Plaintiffs filed their complaint, Plaintiffs' complaint is barred by the statute of repose. The trial court's orders are affirmed.

AFFIRMED.

Judges DIETZ and CARPENTER concur.