IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WAYNE NUTT, | ) | Case No. 7:21-CV-00106-M |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S MEMORANDUM** |
| v. | ) | **IN SUPPORT OF MOTION FOR** |
| | ) | **ATTORNEYS' FEES** |
| ANDREW L. RITTER, in his official capacity as Executive Director of the North Carolina Board of Examiners for Engineers and Surveyors, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES**

W. Cory Reiss (NC Bar No. 41549)
REISS & NUTT, PLLC
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Phone: (910) 420-4674
Fax: (910) 420-4637
Email: wcreiss@reissnutt.com
*Local Civil Rule 83.1(d)*
*Counsel for Plaintiff*

Robert J. McNamara (VA Bar No. 73208)\*
Joseph Gay (D.C. Bar No. 1011079)\*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: rmcnamara@ij.org
       jgay@ij.org
*\* Special Appearance pursuant to
 Local Rule 83.1(e)*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| TABLE OF AUTHORITIES | iii |
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
|    A. A Reasonable Lodestar Is $331,878. | 2 |
|       1. Reasonable hours times reasonable rates yields $331,878. | 2 |
|          a. The attorneys billed relatively few hours to this matter. | 2 |
|          b. Record evidence reflects reasonable hourly rates for the work done. | 4 |
|          c. The correct lodestar is $331,878. | 6 |
|       2. The lodestar is also reasonable under the *Johnson/Barber* factors. | 6 |
|    B. Nutt Brought No Claims Unrelated To His Successful First Amendment Claim. | 9 |
|    C. The Court Should Award $331,878. | 10 |
| CONCLUSION | 10 |
| CERTIFICATE OF SERVICE | 11 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bowers v. Cornell Roofing & Sheet Metal Co.*,
    No. 18-00434-CV-W-JTM, 2019 WL 4888626,
    2019 U.S. Dist. LEXIS 237888 (W.D. Mo. July 9, 2019) ........................................................3

*Edwards v. Hooks*,
    No. 5:21-CT-3270-D, 2023 WL 8449250,
    2023 U.S. Dist. LEXIS 217892 (E.D.N.C. Dec. 6, 2023) .......................................................5

*Grissom v. Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) ...............................................................................................2, 7

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .............................................................................................................1, 8

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................................................................................3

*Lefemine v. Wideman*,
    758 F.3d 551 (4th Cir. 2014) ...................................................................................................1

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) .................................................................................................................1

*Rum Creek Coal Sales v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) .....................................................................................................2

*Stuart v. Walker-McGill*,
    No. 11-CV-804, 2016 U.S. Dist. LEXIS 7976 (M.D.N.C. Jan. 25, 2016) ...................2, 4, 5, 6

*Swallow v. Toll Bros., Inc.*,
    No. C-08-02311 JCS, 2009 WL 513486,
    2009 U.S. Dist. LEXIS 19291 (N.D. Cal. March 2, 2009) ......................................................6

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) .................................................................................................................1

**STATUTES**

42 U.S.C. § 1983 ..............................................................................................................................1

42 U.S.C. § 1988................................................................................................................1

**OTHER AUTHORITIES**

Bureau of Labor Statistics, *CPI Inflation Calculator*,
    https://www.bls.gov/data/inflation_calculator.htm......................................................5

**INTRODUCTION**

Plaintiff won this civil-rights action under 42 U.S.C. § 1983 and the undersigned pro bono counsel is therefore entitled to be awarded reasonable attorneys' fees at a market rate. For the reasons explained below, a reasonable award of attorneys fees in this matter would total $331,878.[1]

**ARGUMENT**

A § 1983 plaintiff who prevails on "any significant issue" in the litigation is a prevailing party entitled to attorneys' fees under 42 U.S.C. § 1988. *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The special-circumstances exception is "narrowly limited" and applies only in "rare" circumstances not applicable here. *Lefemine v. Wideman*, 758 F.3d 551, 555–56 (4th Cir. 2014). The Court should therefore grant Plaintiff's motion and award fees.

Calculating those fees in this jurisdiction requires a three-step inquiry, each of which is discussed below. First, courts must establish the "lodestar" figure by multiplying a reasonable hourly rate by the reasonable hours expended on the case. "[T]here is a strong presumption that the lodestar" is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). But to ensure its reasonableness, courts conduct two further inquiries: They subtract fees for hours spent on any unsuccessful claims to the extent those claims are unrelated to the successful ones. And then they award a percentage of the lodestar based on the plaintiff's degree of success.

---

[1] Plaintiff is also entitled to recover his costs, which is the subject of a separate filing.

### A. A Reasonable Lodestar Is $331,878.

District courts in the Fourth Circuit sometimes establish a lodestar figure by straightforwardly multiplying a reasonable hourly rate by the hours reasonably expended.[2] Other times, they apply a twelve-factor test for reasonableness called "the *Johnson/Barber* factors."[3] Each approach yields the same result.

#### 1. Reasonable hours times reasonable rates yields $331,878.

A court calculates the lodestar by multiplying hours expended by a reasonable local rate.[4] Plaintiff has submitted along with this motion detailed records summarizing the qualifications of and time expended by the attorneys who litigated this case, along with testimony from unaffiliated attorneys about prevailing local rates. As detailed below, the hours actually expended multiplied by a reasonable hourly rate yields a lodestar of $331,878.

##### a. *The attorneys billed relatively few hours to this matter.*

The primary litigation of this matter was conducted by two attorneys from the Institute for Justice, supported by local counsel Cory Reiss of the Wilmington firm Reiss Nutt; all three attorneys have provided contemporaneously recorded time records, from which they have deleted a number of hours after exercising reasonable billing judgment. *See* Ex. 1, Declaration of Robert McNamara in Support of Plaintiff's Motion for Attorneys' Fees ("McNamara Dec."); Ex. 5, Declaration of Joseph Gay in Support of Plaintiff's Motion for Attorneys' Fees ("Gay Dec."); Ex. 7, Affidavit of W. Cory Reiss in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Reiss Aff."). These time records reveal that counsel actually billed 550.3 hours to this matter;

---

[2] *See, e.g.*, *Stuart v. Walker-McGill*, No. 11-CV-804, 2016 WL 320154, 2016 U.S. Dist. LEXIS 7976 (M.D.N.C. Jan. 25, 2016).
[3] *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).
[4] While Plaintiff was represented *pro bono* by out-of-state counsel, the default rule is that the appropriate hourly rate is derived by reference to prevailing rates in the local community. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

they seek to recover for only 428.7 of those hours. Plaintiffs' counsel have similarly provided contemporaneous time records for paralegals at the Institute for Justice and a legal assistant from Reiss Nutt. McNamara Dec. ¶¶ 9–12; Reiss Aff. ¶ 12. As with attorney time, attorneys from the Institute for Justice have exercised billing judgment to reduce the total hours of paralegal time billed: Institute paralegals billed 139.5 hours to this matter, but counsel seeks to recover for only 86 hours of paralegal time. McNamara Dec. ¶¶ 9–12. The Institute's time records also reflect approximately 20 further hours of time spent by other attorneys and paralegals on this matter, for which the Institute does not seek to recover. *Id.* ¶ 13.[5]

The total hours billed to this matter are strikingly low—in part because of counsel's pre-existing familiarity with the subject matter of this case. *See* McNamara Dec. ¶ 5. This action required significant discovery, including multiple depositions, interrogatories, and several thousand pages of document production by defendants.[6] *Id.* ¶ 6. This discovery was time-consuming and, at points, needlessly contentious. *Compare* ECF 49-8 (deposition transcript of 30(b)(6) designee David Evans) at 23:21–22 ("If you want to go far afield of Topic 2, then I object, and I'm instructing him not to answer."), *with In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 904, 931–32 (N.D. Cal. 2023) ("[I]t is improper to instruct a corporate witness not to answer a question based on scope." (collecting cases)).

---

[5] Counsel's billing records include time spent preparing the motion for preliminary injunction that was ultimately mooted by developments in a state-court case in which Plaintiff had sought to testify. ECF 37 (withdrawal of motion). This is appropriate: The relevant question is whether the hours were reasonably expended, not whether the specific motions were ultimately granted. "Simply because an attorney loses a motion in an otherwise successful litigation does not necessarily mean attorneys' fees should not be awarded for time spent on the unsuccessful [motion]." *Bowers v. Cornell Roofing & Sheet Metal Co.*, No. 18-00434-CV-W-JTM, 2019 WL 4888626, 2019 U.S. Dist. LEXIS 237888, at *3 (W.D. Mo. July 9, 2019). The preliminary-injunction motion was meritorious, as demonstrated by Plaintiff's eventual victory on the merits, and it was mooted for reasons beyond Plaintiff's control.

[6] Defendants did not propound any written discovery.

Despite all this, Plaintiff seeks to recover only 431 hours for the work of three attorneys and 86.2 hours for the work of two paralegals and a legal assistant. This is far lower than the total number of hours in other constitutional cases in North Carolina. In *Stuart v. Walker-McGill*, for example, a challenge to an abortion restriction, one of the lead attorneys, alone, sought to recover for 431.6 hours. *Stuart v. Walker-McGill*, No. 11-CV-804, 2016 WL 320154, 2016 U.S. Dist. LEXIS 7976, at *8 (M.D.N.C. Jan. 25, 2016). Her co-counsel billed 447.2 hours, to say nothing of the dozen other attorneys on the case. *Id.* Completing a contentious case that required discovery, multiple rounds of substantive briefing, and oral arguments with fewer than 500 total hours of attorney time is a particularly efficient use of resources.

### b. *Record evidence reflects reasonable hourly rates for the work done.*

Attorney Cory Reiss provided direct testimony about the market rates he charges when not working pro bono; his declaration says that he would ordinarily charge $300 per hour for his time in a matter like this and $90 per hour for time spent by his legal assistant. Reiss Aff. ¶ 3.

The Institute for Justice is a public-interest law firm that exclusively represents clients on a pro bono basis, which means they do not have a prevailing market rate. *See* McNamara Dec. ¶ 6. One attorney, Joseph Gay, left private practice in 2021, at which time his actual market rate was $800 per hour. Both Institute for Justice attorneys have substantial litigation experience—Mr. Gay has been in practice for over 14 years; Mr. McNamara for over 17. *See* Gay Dec. ¶ 3; McNamara Dec. ¶ 3. Mr. McNamara, in addition to extensive experience litigating constitutional cases in federal court at the trial, appellate, and Supreme Court level, has particular experience in the constitutional issues presented by this case; he along, with his colleagues at the Institute for Justice, personally litigated several of the cases cited in this Court's summary-judgment opinion. McNamara Dec. ¶ 5.

Because they do not charge their clients (and therefore cannot provide evidence of what those clients pay), the Institute for Justice attorneys sought opinion testimony from Patrick Mincey of the law firm Cranfill Sumner LLP, who is the Chair of that firm's Administrative, Regulatory, and Government Law Group, as well as its White Collar, Government Investigations and Special Matters Practice Group. *See* Ex. 8 ("Mincey Dec.") ¶ 3. Mr. Mincey's primary office address is in Wilmington. *Id.* As a result of his extensive litigation experience, Mr. Mincey is directly familiar with prevailing rates in the Eastern District of North Carolina for work of the sort that was required to litigate this case. *Id.* ¶ 5. In his opinion, attorneys of equivalent experience to Mr. McNamara and Mr. Gay would charge between $750 and $795 per hour in the local market for work of the sort required by this case. *Id.* ¶ 7. Mr. Mincey also testified that a reasonable paralegal rate would be $295 per hour. *Id.*

This evidence suggests that local rates for complex federal litigation are somewhat higher than some North Carolina cases have recognized. *See, e.g.*, *Stuart*, 2016 U.S. Dist. LEXIS 7976, at *54–55 (awarding $550 per hour for partner work and noting that the evidence showed an "experienced constitutional lawyer in North Carolina charge[d] paying clients an hourly rate of $625"); *see also Edwards v. Hooks*, No. 5:21-CT-3270-D, 2023 WL 8449250, 2023 U.S. Dist. LEXIS 217892 (E.D.N.C. Dec. 6, 2023) (surveying caselaw in the absence of evidence and determining $500 per hour was a reasonable rate for a partner). This is unsurprising in light of recent sharp inflation: The Bureau of Labor Statistics' "CPI Inflation Calculator," for example, suggests that the $550 rate awarded by the *Stuart* court would be $715.99 in January 2024, while the $625 rate it identified as a comparator would be over $800 today. *See* Bureau of Labor Statistics, *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm. This disparity between past cases and current market realities is why district courts in other jurisdictions

have concluded that they should rely on evidence rather than purely on prior caselaw in determining appropriate market rates. *See, e.g.*, *Swallow v. Toll Bros., Inc.*, No. C-08-02311 JCS, 2009 WL 513486, 2009 U.S. Dist. LEXIS 19291, at *20 (N.D. Cal. March 2, 2009).

In short, the testimony reveals an increase in lawyer rates that is roughly on par with inflation. It reveals an increase in paralegal rates, however, that outpaces inflation—where the *Stuart* court found that the evidence supported an award of $125 per hour for paralegal word, Mr. Mincey's testimony suggests the actual prevailing rate for work of this sort is now $295 per hour, more than double what the court awarded in 2016. In a further exercise of billing judgment, Plaintiff respectfully suggests that the Court split the difference and award paralegal time at a rate of $150 per hour.

### c. The correct lodestar is $331,878.

The chart below summarizes the reasonable hours and rates for Plaintiff's counsel in this case, drawn from the supporting declarations and their attachments:

| Name | Hourly Rate | Hours Billed | Hours Requested | Total Amount Requested |
|---|---|---|---|---|
| Robert McNamara | 750 | 209.6 | 152.4 | $116,025 |
| Joseph Gay | 750 | 335 | 270.6 | $202,950 |
| W. Cory Reiss | 300 | 5.7 | 5.7 | $1,710 |
| Maxwell Odynski | 90 | .2 | .2 | $18 |
| Molly Hanis | 150 | 116.5 | 65.5 | $9,825 |
| Kendall Morton | 150 | 23 | 20.5 | $3,075 |
| | | | | $331,878 (total) |

### 2. The lodestar is also reasonable under the *Johnson/Barber* factors.

The 12 *Johnson/Barber* factors are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time

limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom*, 549 F.3d at 321. As discussed below, each factor supports the reasonableness of Plaintiff's requested lodestar here.

*The time and labor expended*

As noted above, Plaintiff seeks to recover for a total of fewer than 500 hours of attorney time. But that time far undercounts the time and labor expended on this case. As noted in the declarations accompanying this motion, the litigation of this case actually required more than 700 hours. *Supra* at 6. Counsel, in an exercise of careful billing judgment, have drastically reduced the time and labor for which they seek compensation.

*The novelty and difficulty of the questions raised*

This case presented novel issues of First Amendment law. Indeed, as the Court previously explained, the issues involved "difficult" questions about First Amendment "first principles," applied to a complex and "somewhat circular" statutory scheme. Mot. Hr'g Tr. 4:2–12, [ECF 62](). And as the Court's summary-judgment opinion noted, a different judge in this district confronted a nearly identical question just last year and came to a different conclusion. [ECF 63]() at 29.

*The skill required to properly perform the legal services rendered*

As discussed in the supporting declarations, Plaintiff's counsel are particularly—perhaps uniquely—suited to litigate the First Amendment issues in this case. *See* McNamara Dec. ¶ 5. They, or other attorneys at their firm, have litigated many of the leading cases in this area, and that experience and skill allowed them to litigate this case with particular efficiency. *Id.*

*The attorney's opportunity costs in pressing the instant litigation*

Plaintiff's counsel practice nationally, and receive, weekly, dozens of requests for their pro bono help. McNamara Dec. ¶ 4. Time spent litigating this case necessarily comes at the cost of *not* spending that time litigating other constitutional cases in other jurisdictions.

*The customary fee for like work*

As discussed above, Plaintiff seeks fees at the evidence-based prevailing local rate for work of this kind. *Supra* at 4–6. That evidence-supported rate is in line with the inflation-adjusted rates identified by other federal decisions in North Carolina. *Id.*

*The attorney's expectations at the outset of the litigation*

Plaintiff's counsel represented him pro bono, *see* McNamara Dec. ¶ 6, but could reasonably expect to recover fees in the event of a successful result because fees are "ordinarily" awarded to prevailing parties in these cases. *Hensley*, 461 U.S. at 429.

*The time limitations imposed by the client or circumstances*

Plaintiff does not seek enhanced fees because of limitations imposed by the client or the circumstances of the case.

*The amount in controversy and the results obtained*

At the outset of this case, Plaintiff Wayne Nutt had been ordered by the Defendants to stop sharing his opinions about engineering matters. Verified Compl. ¶¶ 1, 31, 36–40, ECF 1. These orders did their job—Nutt was unwilling to break the law, and he engaged in self-censorship to avoid breaking the law. Decl. Wayne Nutt Supp. Mot. Summ. J. ¶¶ 53–54, ECF 49-1. At the end of this case, Nutt has obtained exactly the result he wanted: Defendants' orders have been declared unconstitutional, and they have been enjoined from enforce g the engineering-licensing requirement against Nutt for his speech. Judgment, ECF 64. He has achieved the result he sought.

*The experience, reputation, and ability of the attorney*

Plaintiff was represented by experienced constitutional lawyers with particular expertise in the First Amendment issues at the heart of this case. McNamara Dec. ¶ 5. That expertise comes not only in the form of direct litigation experience, but recognition by the editorial staffs of academic publications and the mainstream press alike. *Id*.

*The undesirability of the case within the legal community in which the suit arose*

Plaintiff does not seek a fee enhancement based on this case's unusual undesirability.

*The nature and length of the professional relationship between attorney and client*

Plaintiff has been represented by the same counsel for the nearly three-year duration of this case. *See* ECF 1.

*Attorneys' fees awards in similar cases.*

As discussed above, Plaintiff requests fees at a similar rate as in earlier cases, though for far fewer hours than would be expected in a suit of this difficulty and complexity. *See supra* at 2–4.

**B. Nutt Brought No Claims Unrelated To His Successful First Amendment Claim.**

The Complaint in this case stated a claim under the First Amendment. ECF-1 at 12–14. Nutt prevailed on that claim. As a result, the defendants have been enjoined from enforcing their licensing requirement—not just against Nutt, but against any "unlicensed expert engineering report." ECF 63 at 36. To be sure, the Court had some discretion in choosing how it reached this result—it could have adjudicated the entire statute overbroad, or it could have narrowly confined its relief only to Nutt's particular speech. It chose a middle ground, granting full relief to Nutt and any speaker who is similarly situated, but that choice reflects Nutt's complete vindication on the merits of his sole claim.

### C. The Court Should Award $331,878.

No reduction in the lodestar is necessary because Nutt has achieved complete success. When this case was filed, he was afraid to speak for fear of legal sanction. Now, he, and anyone else like him, can speak freely—completely protected by this Court's injunctive relief. That is the result he sought; that is the result he achieved. An award of $331,878 is therefore appropriate.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees should be granted.

Dated: February 21, 2024.

Respectfully submitted,

/s/ W. Cory Reiss
W. Cory Reiss (NC Bar No. 41549)
REISS & NUTT, PLLC
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Phone: (910) 420-4674
Fax: (910) 420-4637
Email: wcreiss@reissnutt.com
*Local Civil Rule 83.1(d)*
*Counsel for Plaintiff*

/s/ Robert J. McNamara
Robert J. McNamara (VA Bar No. 73208)*
Joseph Gay (D.C. Bar No. 1011079)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: rmcnamara@ij.org
       jgay@ij.org
*\* Special Appearance pursuant to*
  *Local Rule 83.1(e)*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and, pursuant to Local Civil Rule 5.1(e), shall constitute service upon, the following:

Douglas W. Hanna, NCSB #18225
M. Todd Sullivan, NCSB #24554
FIZGERALD HANNA & SULLIVAN, PLLC
3737 Glenwood Ave., Suite 375
Raleigh, NC 27612
Phone: (919) 863-9091
Fax: (919) 424-6409
dhanna@ghslawfirm.com
tsullivan@ghslawfirm.com

*Attorneys for Defendants*

/s/ Robert J. McNamara
Robert J. McNamara
*Attorney for Plaintiff*